UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF RHODE ISLAND

MARY BARCHOCK, THOMAS
WASECKO, and STACY WELLER,
            Plaintiffs,


            v.                          C.A. No. 16-061-ML


CVS HEALTH CORPORATION, THE
BENEFITS PLAN COMMITTEE OF CVS
HEALTH CORPORATION, and
GALLIARD CAPITAL MANAGEMENT,
INC.,
            Defendants.


                    **MEMORANDUM AND ORDER**

   The Plaintiffs[1] in this case, which was brought under Sections 502(a)(2) and 502(a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1132(a)(2) and §1132(a)(3), are participants in the Employee Stock Ownership Plan (the "Plan") of CVS Health Corporation and Affiliated Companies ("CVS") sponsored by CVS and managed by Galliard Capital Management, Inc. ("Galliard"). According to the Plaintiffs, the Defendants breached their fiduciary duties owed to the Plaintiffs and to the Plan by "imprudently investing too much of the Plan's Stable Value Fund assets in ultra-short-term

---

[1] The Complaint is styled as a class action brought on behalf of the named Plaintiffs, the Plan, and participants in the Plan. Complaint at ¶1.

                                1

cash management funds that provided extremely low investment returns." First Amended Complaint (the "Complaint")(ECF No. 30) at ¶2.

The matter is before the Court on review of the second Report and Recommendation ("R&R") issued in the case by Magistrate Judge Sullivan (ECF No. 38). Because the Plaintiffs filed a timely objection to the R&R, the Court reviews *de novo* those portions of the R&R to which an objection has been made. See Fed. R. Civ. P. 72(b). The Court has thoroughly reviewed and considered the Complaint, the Defendants' motion to dismiss the Complaint (ECF No. 32), the Plaintiffs' response (ECF No. 34), the R&R, the Plaintiffs' objections thereto (ECF No. 39), and the Defendants' response (ECF No. 40). Having done so, the Court now adopts the R&R in its entirety. Accordingly, the Defendants' motion to dismiss the Complaint is GRANTED.

**I. Factual Summary[2]**

The Plaintiffs are participants in the Employee Stock Ownership Plan of CVS Health Corporation and Affiliated Companies, which is sponsored by CVS and administered by the Benefits Plan Committee (as designated by the CVS Board of Directors, the "Committee"). The Plan offers various investment

---

[2] The factual summary is based on the allegations in the Complaint.

options,[3] including the Stable Value Fund (the "Fund") managed by Galliard. As stated in the audited financial statement attached to the Plan's 2013 Annual Return on Form 5500,[4] the Fund "seeks to preserve capital while generating a steady rate of return higher than money market funds provide." Complaint ¶27. Unlike other, more aggressive lifestyle funds designed for "younger participants farther from retirement who can wait out the downside of market cycles and have a higher risk tolerance," Complaint ¶9, the Fund is designed for investors who are older and closer to retirement and likely to be more risk-averse.

The Plaintiffs suggest that the Stable Value Fund (1) was excessively concentrated in investments with ultra-short durations, and (2) maintained excessive liquidity "far beyond any reasonable need for it." Complaint at ¶26. The Plaintiffs further assert that, as a result of this approach, they were injured "in the form of significantly lower crediting rates than they would have received had the Stable Value Fund been prudently managed in

---

[3] According to the Complaint, the Plan "gives workers the opportunity to invest in a range of between one or more of sixteen available designated investment options, including the Stable Value Fund." Complaint ¶8.

[4] As noted in the June 24, 2016 R&R, the Plaintiffs agreed that the Court may consider these documents—which were referenced in the initial complaint and later submitted by the Defendants—without converting the instant motion into a motion for summary judgment. First R&R at 2 n.2 (ECF No. 24).

accordance with industry standards regarding duration and liquidity." Id.

In specific terms, the Plaintiffs take issue with having received lower returns because during the years in question, the Defendants allocated more than half of the Fund's assets in the EB Temporary Investment Fund, invested primarily in cash and so-called cash equivalents. Complaint ¶29. According to the Plaintiffs, the EB Temporary Investment Fund was used by other investors as a short-term investment option and offered only a low rate of return. Complaint ¶¶30, 32. The Complaint asserts that during the same time period, another large portion of the Fund was invested in the Wells Fargo Stable Value Fund D, of which Galliard is a wholly owned subsidiary, and which invests all of its assets into the Wells Fargo Synthetic Stable Value Fund (the "WF Synthetic Value Fund"). Plaintiffs note that in the period between 2010 and 2012, the WF Synthetic Value Fund invested less than ten percent of its asset in interest-bearing cash or cash equivalents, from which they infer that Galliard "well understood...that it was not necessary to maintain such a large percentage of cash or cash equivalents in a stable value fund." Complaint ¶¶37,36.

The Plaintiffs note that, when compared to other stable value fund investment averages (as documented in SVIA [Stable

4

Value Investment Association] reports) the investment of the Fund in cash or cash equivalents "*was a severe outlier and categorically imprudent*." Complaint ¶45 (emphasis in original). The Plaintiffs further assert that the large investment in cash depressed the Fund's performance by acting as "an enormous drag on the overall Stable Value Fund portfolio" and because it involved payment of an unnecessary liquidity premium. Complaint ¶46.

Pointing out that the portion of the Fund that was invested in other liquid, capital preservation assets provided a significantly higher return than the EB Temporary Investment Fund, Complaint ¶51, the Plaintiffs conclude that (1) other investments with higher returns would have been readily available; and (2) "excessive allocation" to the EB Temporary Investment Fund constitutes "imprudence in the management of the Stable Value Fund." Complaint ¶61. Although it is unstated how the actual performance of the Fund varied from the average performance of other stable value funds, the Plaintiffs suggest that if the Fund's allocation to cash investments had instead been "invested in the same manner as the other assets of the [Fund]," the Fund would have yielded higher earnings. Complaint ¶52.

In sum, the Plaintiffs assert claims of fiduciary breach

5

against the Defendants by alleging that (1) Galliard caused the Fund to invest in "securities with extremely low yields, low durations, and excessive liquidity compared to what should be expected from prudently managed stable value fund investments," Complaint ¶81; and (2) CVS and the Committee failed to monitor and supervise Galliard, and to cause Galliard to change its investment conduct. Complaint ¶82. The Plaintiffs' assertions are bolstered primarily by comparisons between investment characteristics of the Fund, *i.e.*, the percentage of investments allocated to cash and the duration of investments, with investment averages of other stable value funds, as summarized in the SVIA Survey. <u>See</u>, <u>e.g.</u>, Complaint ¶¶ 17, 23, 24, 44, 45, 47, 48.

On behalf of those Plan participants who invested in the Fund and/or who were invested in the Moderate Lifestyle Fund and/or the Conservative Lifestyle Fund from six years before the filing of this action until the time of trial, the Plaintiffs seek monetary damages for the asserted loss of benefits resulting from the Defendants' alleged breach of their fiduciary duty, injunctive relief, and attorneys' fees and costs. Complaint at ¶¶27-28.

## II. Procedural History

The Plaintiffs brought a first complaint (the "Initial

6

Complaint") on February 11, 2016 (ECF No. 1), asserting—as they do in the instant Complaint—that Defendants "knew or should have known that the Plan's Stable Value Fund assets should have been invested in securities that would have provided a significantly higher yield with no material additional investment, credit, or liquidity risk." Initial Complaint at ¶2. On April 14, 2016, the Defendants filed a motion to dismiss the Initial Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, Defs.' Mem. at 5-6 (ECF No. 15-1), in response to which the Plaintiffs filed an objection on April 28, 2016 (ECF No. 19). The Defendants filed a reply on May 9, 2016 (ECF No.20).

Following a hearing on the Defendants' motion to dismiss on June 10, 2016, Magistrate Judge Sullivan issued a first R&R on June 24, 2016, in which she recommended that the Defendants' motion be granted and the Initial Complaint be dismissed. R&R at 11 (ECF No. 24). Plaintiffs promptly filed an objection to the R&R on July 8, 2016 (ECF No. 27), to which the Defendants filed a response in opposition on July 25, 2016 (ECF No. 29). In the interim, on July 22, 2016, Plaintiffs also filed a motion to amend/correct the Initial Complaint (ECF No. 28).

On August 2, 2016, after this Court granted the Plaintiffs' request to amend/correct the Initial Complaint, the Plaintiffs

7

filed the Complaint now at issue (ECF No. 30). As before, the Defendants filed a motion to dismiss the Complaint for failure to state a claim (ECF No. 32). Plaintiffs filed an objection (ECF No. 34) and Defendants filed a reply (ECF No. 35).

On January 31, 2017, following another hearing on Defendants' motion to dismiss the Complaint, Magistrate Judge Sullivan issued a thorough, detailed, and well-reasoned R&R in which she again recommended that the Defendants' motion be granted and that the Plaintiffs' claims be dismissed for failure to "provide sufficient facts to raise an inference of imprudent investment management on the part of Galliard." R&R at 16. Plaintiffs filed a timely objection to this second R&R on February 14, 2017 (ECF No. 39), to which Defendants filed a response in opposition (ECF No. 40).

### III. Standard of Review

A motion to dismiss for failure to state a claim upon which relief may be granted is governed by Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff, taking all well-pleaded facts as true, and giving the plaintiff the benefit of all reasonable inferences. Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002). In order to withstand a motion to dismiss, a claim "must contain sufficient factual

matter ... to state a claim to relief that is plausible on its face." Katz v. Pershing, LLC, 672 F.3d 64, 72-73 (1st Cir. 2012)(citations omitted). The complaining party must include "factual content that allows the court to draw a reasonable inference" in the pleader's favor. Id. "[I]f, under any theory, the allegations are sufficient to state a cause of action in accordance with the law," the motion to dismiss must be denied. Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir.1994). The Court ignores, however, "statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action-elements." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). In addition, "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." Johansen v. United States, 506 F.3d 65, 68 (1st Cir.2007).

Although the Court generally may not consider documents outside of the complaint unless it converts the motion to dismiss pursuant to Rule 12(b)(6) into one for summary judgment, it may make an exception "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to the plaintiffs' claim; or for documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

It is well established that a motion to dismiss for failure to state a claim in the ERISA context is an "important mechanism for weeding out meritless claims." Fifth Third Bancorp v. Dudenhoeffer, — U.S. — , 134 S.Ct. 2459, 2471, 189 L.Ed.2d 457 (2014). A determination of whether an ERISA claim should be dismissed for failure to state a claim "requires careful judicial consideration of whether the complaint states a claim that the defendant has acted imprudently." Id. (citing Fed. Rule Civ. Proc. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 677–680, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554–563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The standard against which the Defendants' actions are to be measured is "ERISA's prudent person standard." Bunch v. W.R. Grace & Co., 555 F.3d 1, 6 (1st Cir. 2009). "[U]nder ERISA, a fiduciary is required to act with 'the care, skill, prudence and diligence ... that a prudent man acting in a like capacity and familiar with such matters would use.'" Id. at 7 (quoting Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 18 (1st Cir.1998)); 29 U.S.C. §1104(a)(1)(B). The Prudent Man Rule is a test "of *conduct*, and not a test of the result of performance of the investment." Id. (quoting Donovan v. Cunningham, 716 F.2d 1455, 1467 (5th Cir.1983)). Moreover, the prudence of a

10

fiduciary's actions "cannot be measured in hindsight;" rather, they are "viewed from the perspective of the time of the challenged decision." Bunch v. W.R. Grace & Co., 555 F.3d at 7.

**IV. Discussion**

In their objection to the R&R, the Plaintiffs maintain that they have stated "plausible" claims for breach of fiduciary duty under ERISA. Pltfs.' Mot. 2 (ECF No. 39). Specifically, they assert that the R&R erroneously characterizes their claims as a mere "hindsight" attack on the Stable Value Fund's performance; that it failed to appreciate that the Plaintiffs' allegations go to the very structure and definition of a stable value fund; and (3) that it conflates Plaintiffs' properly-pleaded breach of prudence claims with unasserted claims for breach of the duty of loyalty and violation of plan documents. Id. The Plaintiffs also reiterate that Galliard's management decision (1) to maintain the investments for a short duration, and (2) to maintain a large portion of assets in cash (both decisions as compared to average duration and proportion of investment of other stable value funds) "predictably" caused the Fund to underperform. Id. The Plaintiffs maintain that such management decisions constituted a violation of Galliard's fiduciary duty and its duty of prudence under ERISA because the Fund's assets would have yielded higher returns, had they been invested more in line with the average

investment allocations of other stable value funds. Id. at 7.

On their part, the Defendants maintain that, "by plaintiffs' own account, the CVS Stable Value Fund was at all times structured to meet—and did in fact meet—its stated investment objectives: 'to preserve capital while generating a steady rate of return higher than money market funds provide.'" Defs.' Response at 1-2 (ECF No. 40). The Defendants note that, under those circumstances, Plaintiffs' contentions that the Fund could have "predictably" earned higher returns by means of a different investment allocation, constitutes "improper hindsight critique." Id. at 2. Regarding the Plaintiffs' reliance on industry averages to support a claim of Defendants' imprudent investment in higher cash and cash-equivalent holdings, the Defendants note that "the salient question is whether the [Fund]'s portfolio conformed to its investment objective," which it concededly did. Id.

As noted in the January 31, 2017 R&R, the Complaint includes no allegations from which it could be inferred that Galliard failed to adhere to the Plan's guidelines and investment objectives, R&R at 14, nor do the Plaintiffs assert that Galliard assessed unreasonable or excessive fees or that it materially deviated from the disclosures in the Plan documents.

Instead, the newly asserted facts in the Complaint focus primarily on the extent and duration of the Fund's investment in

12

cash or cash-equivalent assets, as compared to industry averages, and are intended to permit an inference that Galliard's conduct was inconsistent with its duty of prudence. With the benefit of 20/20 hindsight, the Plaintiffs assert, *inter alia*, that if the Fund's allocation to cash had been invested in the same manner as the Fund's other assets, the Fund would have earned more. Complaint ¶52. Although that may have been the outcome in this particular case, the Plaintiffs appear to suggest that, rather than keeping the Fund's assets diversified, it would have been more prudent to put more eggs into the same basket, in the anticipation of a greater gain while assuming that such a strategy would entail no additional risk.

In support of this contention, the Plaintiffs point to average allocation data "based on a large sample of stable value funds," from which the Plaintiffs infer that the Fund's investment allocation was a "severe outlier and categorically imprudent." Complaint ¶45. Leaving aside the question of whether the calculated average of such data points is an appropriate measure of comparison—as it allows for the possibility of multiple outliers at either end of the spectrum—a mere deviation from that average does not allow for an inference that Galliard's investment strategy was imprudent. As such, the comparison of the Fund's investment allocation with an industry average is

13

insufficient to show that Galliard did not act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. §1104(a)(1)(B).

The Plaintiffs in this case are not asserting that they incurred losses because Galliard deviated from the Plan's disclosed investment objective; rather, they have commenced this litigation because their investments, when considered in hindsight, might have yielded higher gains if Galliard had elected to allocate the Fund's investment more in line with the industry average. It is well established, however, that "the test of prudence...is one of conduct, and not a test of the result of the performance of the investment." Bunch v. W.R. Grace & Co., 555 at 7. In this case, the Fund was invested in conformance with its stated objective and whether that strategy was prudent cannot be measured in hindsight. Id. Accordingly, Plaintiffs' Complaint is insufficient to withstand the Defendants' motion to dismiss.

## Conclusion

For the above reasons, and for the reasons set forth in the January 31, 2017 R&R, the Defendants' motion to dismiss the Complaint is GRANTED and the Complaint is dismissed with

14

prejudice.

SO ORDERED.

/s/ Mary M. Lisi

Senior United States District Judge
April 18, 2017